IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

M.B.M.G.,

                    Plaintiff,                    CIVIL ACTION FILE NO.

        v.                                        1:18-CV-3488-JFK

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

application.    For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance

benefits on February 5, 2015, alleging that she became disabled on September 15,

2014.  [Record ("R.") at 16, 215-19].  After Plaintiff's application was denied initially

and upon reconsideration, a hearing was held by an Administrative Law Judge ("ALJ")

on June 19, 2017. [R. at 16, 33-62, 78-104]. The ALJ issued a decision denying Plaintiff's claim on November 7, 2017, and the Appeals Council denied Plaintiff's request for review on May 25, 2018. [R. at 1-6, 16-27]. Plaintiff filed a complaint in this court on July 23, 2018, seeking judicial review of the final decision of the Commissioner. [Doc. 3]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.  Facts

The ALJ found that, through the date last insured, Plaintiff had the following impairments which are "severe" within the meaning of the Social Security regulations: cervical radiculopathy and ischemic heart disease. [R. at 18]. The ALJ also found that Plaintiff had the following non-severe impairments: obesity, osteoarthritis, migraine headaches, essential hypertension, and depression. [R. at 19]. Despite the presence of these impairments, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 19-20]. The ALJ found that, through the date last insured, Plaintiff was unable to perform any of her past relevant work, however, that there were jobs that existed in significant numbers in the national economy that she could have performed.

2

[R. at 25-26].  As a result, the ALJ concluded that Plaintiff was not under a disability from September 15, 2014, the alleged onset date, through June 30, 2017, the date last insured.  [R. at 27].

The decision of the ALJ [R. at 16-27] states the relevant facts of this case as modified herein as follows:

The claimant is alleging disability as of September 15, 2014, due to stroke, cyst on the brain, neck problems, heart condition, hypertension, pinched nerves in the hands, thyroid, and depression.  She testified that she began having headaches, described as migraines, in September 2014.  She was seen at Emory Hospital and reported being told that she had a benign cyst and was prescribed medication for headaches.  She denied significant relief with the medications.  The claimant estimated that she had intermittent headaches approximately three days per week, lasting up to six hours at a time.  The claimant related having a history of stroke, with some left-sided weakness in the left leg from the knees to the ankles and with constant swelling.  She stated that she experienced shortness of breath and heart palpitations.

The claimant estimated that she was able to walk and stand for 12 to 15 minutes due to knee problems.  She stated that she had been diagnosed with arthritis.  She reported that she was able to sit "ok."  The claimant stated that she had been diagnosed

3

with carpal tunnel and estimated that she was able to lift 12 pounds occasionally due to numbness in her hands. She reported feeling easily tired when climbing stairs. As to mental health, the claimant stated that she suffered from frequent anxiety and crying due to stress. She denied receiving any mental health treatment. She reported taking medications in the past but remarked that she ran out.

A consultative evaluation was completed on August 10, 2010, by Dianne Bennett-Johnson, M.D. The claimant complained of problems with a disc in neck and arthritis in the knees. She related that she was originally injured in 2008, undergoing right knee surgery, and that symptoms worsened after surgery. She denied arthritis in the right knee but related recently being advised of having arthritis in the left knee. She reported being rear-ended in December 2010 and subsequently experiencing radiating pain down the right side of all of the fingers on the right, with diminished grip. The claimant complained of experiencing neck pain, with difficulty sitting, but no difficulty standing. She added that she suffered from lower extremity swelling. She reported that she required assistance with brushing and combing her hair due to upper extremity issues. She also reported that she received help when taking a shower due to loss of balance. The claimant related having a low mood and added that she was

4

recently widowed and had suffered the loss of other relatives as well. She reported having some incontinence issues with her bowels and bladder.

On examination, the claimant was observed to be obese and fatigued; however, she did not appear to be in acute distress while sitting. She was in obvious distress on arising, complaining of neck pain, and she was unable to lie on the examination table. Blood pressure was 140/90. She weighed 260 pounds and was five feet, seven inches tall. The report reflects spasm of the neck muscles, especially on the right, tender to palpation. Cardiac examination revealed regular rate and rhythm, great 2/6 systolic murmur, absent S3 and S4, with no elevation of jugular venous pulsation or carotid bruit. There was no edema or varicosities. Musculoskeletal evaluation revealed markedly diminished extension with pain, diminished flexion of the cervical spine, lumbar flexion to 80 degrees, and complaints of neck pain. There was crepitance on palpation of the right knee, with no joint line tenderness or effusion. The claimant exhibited a normal gait and tandem walk. Sensation was noted as diminished at the fingertips on the right, with reduced grip strength on the right. There was no cyanosis, clubbing, or edema of the extremities. The claimant exhibited a depressed mood, alert and fully oriented, with otherwise normal mentation. X-ray of the right knee revealed mild degenerative medial joint space narrowing, without evidence of acute

AO 72A

(Rev.8/82)

abnormality. Dr. Bennett-Johnson diagnosed the claimant with cervical radiculopathy, status/post motor vehicle accident, depression, and knee arthritis. (Exh. 5F).

Donald Kent, Ph.D., completed a consultative psychological evaluation of the claimant on July 7, 2011. The claimant alleged problems with a disc in the neck, arthritis in the knees, and headaches. She attributed depression to difficulty coping with the deaths of her husband and her sister. She stated that she cannot sleep well. She reported being forgetful and having difficulty focusing. She denied seeking mental health treatment. Mental status examination reflects that the claimant was alert and oriented. Adequate rapport was established. Dr. Kent noted that the claimant appeared to be moderately to severely depressed. She was diagnosed with major depressive disorder, single episode, severe without psychotic features and Axis II diagnosis of estimate borderline intellectual functioning, without intelligence testing, along with Axis III diagnoses of neck injury, headaches, and arthritis by history.

Dr. Kent opined that the claimant's ability to maintain concentration and attention to tasks was impacted by her depressed mood and that she was generally not able to follow through and complete tasks. The doctor concluded that the claimant was only capable of following simple directions and completing well-learned tasks and that she was likely a slow learner on a new job. Dr. Kent indicated that the claimant would

have no particular problems regarding interaction with co-workers, supervisors, and/or the public. The doctor opined that the claimant's depressed mood would likely make it difficult to adhere to a work schedule and meet production norms. (Exh. 4F).

An emergency room report from Emory University Hospital dated September 4, 2014, shows that the claimant presented with a headache, a history of coronary artery disease, hypertension, and anemia. She related that the headache radiated to the back of her neck and prevented sleep. She described it as an "ice cream freeze" headache. The claimant complained of neck pain but denied changes in vision, nausea, vomiting, or recent trauma. She denied chest pain, shortness of breath, numbness, or tingling. Blood pressure was 192/92, and oxygen saturation was 100 percent. The claimant was alert, in no acute distress, smiling, and laughing intermittently throughout the evaluation. There was normal range of motion of the back with normal alignment and full range of motion of the neck without pain. Cardiovascular examination was essentially normal. The musculoskeletal evaluation revealed no edema. Gait was normal, and there was no difficulty with tandem gait. Neurologically, the claimant was alert and oriented, with no focal neurological deficits.

According to the report, the claimant complained of difficulty with balance. However, both a cerebellar test and ambulation were normal. A computerized

7

tomography ("CT") scan of the head showed no evidence of acute ischemic or hemorrhagic insult. There was a pineal lesion, likely representing a pineal cyst, with a referral for a magnetic resonance imaging ("MRI"). According to progress notes, it was not believed that the mass was related to headaches. Treatment notes show that the claimant ambulated to the bathroom with no difficulty and in no distress. The report shows that she felt better after medications. The claimant was diagnosed with headache and pineal mass. The report shows that the claimant remained stable with no vomiting and no complaints of headache, dizziness, or nausea. She underwent an MRI of the brain, which revealed no CT evidence of acute ischemic or hemorrhagic insult, along with a 1.0 centimeter pineal gland cyst, a normal variant, and an otherwise normal MRI of the brain. No follow-up was necessary. (Exh. 8F).

A discharge summary from Emory University Hospital shows that the claimant was admitted from January 3 to January 6, 2015, for complaints of leg weakness and numbness. It was noted that the claimant had a history of coronary artery disease, hypertension, congestive heart failure, anemia, and fibroids. According to the report, symptoms resolved within 15 minutes of arrival to the emergency room. A CT scan of the head showed no acute intracranial abnormality and stable pineal gland cyst. Neurological examination revealed some slight leg weakness and facial droop. An

8

MRI revealed bilateral shattered infarcts in the occipital and temporal areas with a left vertebral occlusion and atherosclerosis in the right vertebral artery. The claimant was diagnosed with cerebrovascular accident, having posterior circulation infarcts, likely thromboembolic from atherosclerosis in the vertebral arteries, improving in lower left extremity weakness since admission. According to an echocardiogram, there was mild diastolic dysfunction and ejection fraction of 55 percent. The claimant was further diagnosed with coronary artery disease, heart failure, anemia, and hypertension. It was noted that she was non-compliant with medications at home. She was discharged in stable condition and was prescribed Aspirin, Atorvastatin, Ferrous Sulfate, Lisinopril, and Nicotine patches. Home exercises, physical therapy, occupational therapy, and rehab medicine were recommended. (Exh. 9F, pp. 8 to 10).

A progress note from Aaron Anderson, M.D., with Emory Health, shows that the claimant was evaluated in January 2015 for follow-up of a stroke. The claimant denied any new focal neurological deficits since discharge. Her blood pressure was 154/82, and she weighed 270 pounds. Cranial nerves and motor and sensory examinations were essentially normal. Strength was full in all four extremities and her gait was stable. Deep tendon reflexes were reduced in the bilateral biceps, triceps, patellar, and ankles. Cerebellar evaluation revealed normal finger to nose to finger

9

with rapid alternating movements and normal heel to shin testing. The claimant was assessed with hypertension, hyperlipidemia, coronary artery disease, smoker, obesity, and recent ischemic stroke, with no deficits at baseline. (Exh. 10F, pp. 1 to 5).

When the claimant was seen for a follow-up on March 13, 2015, progress notes reflect complaints of fatigue and depression without stroke symptoms. Examination shows that the claimant was awake and alert with normal cranial nerves and normal motor and sensory examinations. Deep tendon reflexes were reduced. However, her gait was stable and a cerebellar examination was essentially normal. Her blood pressure was 137/80, with a goal of 130/80. (Exh. 10F, pp. 7 to 11).

The record reflects that the claimant was seen in the emergency room at DeKalb Medical Center on March 17, 2015, for facial swelling associated with tooth pain. She denied significant weight change, cardiovascular palpitations, or joint pain. On physical examination, her blood pressure was 147/69. There was no lymphadenopathy of the neck. There was good strength and tone noted on musculoskeletal evaluation. There was no cyanosis, clubbing, or edema noted in the extremities. The record shows poor dentition in the upper molar region with swelling in the right upper face region. The claimant had normal affect, insight, and concentration and did not appear to be in acute distress. (Exh. 12F, pp. 13 to 14).

10

Follow-up treatment notes from Emory Clinic on June 2015, the last record of treatment, indicates that the claimant reported intermittent bilateral ankle swelling but denied pain, numbness, or tingling. She further denied blurred vision or any symptoms of stroke. Physical examination shows that the claimant was alert and oriented. Blood pressure was 135/71. Cranial nerve evaluation, cerebellar evaluation, motor examination, and sensory examination were essentially normal. Deep tendon reflexes were reduced; however, gait was stable. The report shows that there was no significant disability and that, despite some symptoms, the claimant was able to carry out all usual activities. She was diagnosed with other late effects of cerebrovascular accident. Treatment notes show that the etiology of the stroke appeared to be a large vessel disease from the bilateral vertebral artery atherosclerosis, potentially causing distal embolism. Although the report reflects that cardioembolism was still possible, it indicates that it was less likely. (Exh. 13F, pp. 2 to 5).

The claimant completed an Adult Function Report. (Exh. 6E). She indicated that she required some assistance with personal care. She denied needing special reminders to take care of her personal needs or to take her medicine. The claimant stated that she prepared meals one day per week and performed some housework. She indicated that she shopped in stores for food, accompanied by her family. She noted

11

no problems with handling money.  She denied any social activities but indicated that she attended church every Sunday.  The claimant reported that she has no problems getting along with others.  She stated that she was able to finish what she started, able to follow spoken instructions "good," and able to follow written instructions "ok."

Maureen Muoneke, M.D., a state agency medical consultant, reviewed the claimant's medical evidence of record in May 2015 and concluded that physical impairments were non-severe.  (Exh. 1A).  L. Zuniga, M.D., state agency medical consultant, reviewed the claimant's medical evidence of record in September 2015 and affirmed Dr. Muoneke's opinion.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).    The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is

13

followed in order to determine whether a claimant has met the burden of proving her disability. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not engaged in substantial gainful activity. <u>See</u> <u>id.</u> The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments. <u>See</u> <u>id.</u> At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. <u>See</u> <u>id.</u> "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." <u>Doughty</u>, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." <u>Id.</u> If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).

14

## IV.  Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2017.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 15, 2014, through her date last insured of June 30, 2017.  (20 C.F.R. § 404.1571, *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: cervical radiculopathy and ischemic heart disease.  (20 C.F.R. § 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5.  Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she can occasionally climb ladders, ropes, and scaffolds.  She would have occasional difficulty with complex and detailed instructions, with ability to concentrate for two hours at a time.

6.  Through the date last insured, the claimant was unable to perform any past relevant work.  (20 C.F.R. § 404.1565).

7.  The claimant was born on July 26, 1969, and was 47 years old on the date last insured.  (20 C.F.R. § 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. § 404.1564).

AO 72A

(Rev.8/82)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (20 C.F.R. §§ 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 15, 2014, the alleged onset date, through June 30, 2017, the date last insured. (20 C.F.R. § 404.1520(g)).

[R. at 18-27].

## V. Discussion

Plaintiff argues that the ALJ's decision denying her disability application should be reversed. [Doc. 10]. According to Plaintiff, the ALJ did not fully and fairly develop the record. [Id. at 8-10]. Specifically, Plaintiff contends that the ALJ should have ordered an updated consultative mental health evaluation.[1] [Id.]. For the reasons discussed *infra*, the court finds Plaintiff's arguments unpersuasive and concludes that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards.

_____

[1]Plaintiff does not contend that the ALJ should have ordered an additional physical consultative evaluation. [Doc. 10].

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981). "Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." <u>Brown v. Shalala</u>, 44 F.3d 931, 935 (11th Cir. 1995) (citing <u>Kelley v. Heckler</u>, 761 F.2d 1538, 1540 (11th Cir. 1985)). In making this determination, courts "are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." <u>Id.</u> (citations and internal quotation marks omitted). The relevant regulations provide that it is the ALJ who has discretion to determine whether to order a consultative evaluation. <u>See</u> 20 C.F.R. §§ 404.1512(b)(2) ("We may ask you to attend one or more consultative examinations at our expense."), 404.1517 ("[W]e may ask you to have one or more physical or mental examinations or tests."), 416.912(b)(2), 416.917. The Eleventh Circuit has held that an ALJ is not required to order a consultative examination or other evidence "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." <u>Ingram v. Comm'r of Social Security Admin.</u>, 496 F.3d 1253, 1269 (11th Cir. 2007). The undersigned concludes that the ALJ in the present case had sufficient information

17

in the record to make an informed decision regarding Plaintiff's alleged mental limitations. As a result, the ALJ was not obligated to obtain an additional consultative mental health evaluation.

The ALJ assessed Plaintiff's mental residual functional capacity and found that she would have occasional difficulty with complex and detailed instructions and that she would have the ability to concentrate for two hours at a time. [R. at 20]. In evaluating Plaintiff's mental limitations, the ALJ discussed Plaintiff's medical records, her testimony and self-reports, a psychological assessment from a State agency consultant, and a third party report from Plaintiff's husband. Plaintiff reported, and the record confirms, that she received a significant amount of medical treatment for physical problems. [R. at 269-74, 312-16, 478-772]. The ALJ noted, however, that Plaintiff denied seeing a doctor or other health care professional for any mental condition despite her allegations that she suffered from anxiety and depression. [R. at 19, 48, 52, 269, 272]. The record also reveals that Plaintiff took numerous medications for problems related to her heart, thyroid, cholesterol, and blood pressure. But, as the ALJ pointed out, Plaintiff indicated in disability reports that she did not take any medication for her mental problems. [R. at 19, 271-72, 315-16]. In addition, the ALJ

18

noted that Plaintiff, at the reconsideration level, "did not allege any changes in her psychological condition or any new psychological limitation." [R. at 19].

Plaintiff's testimony at the administrative hearing confirmed the lack of treatment for any alleged mental difficulties. Plaintiff testified that, although she suffered from frequent anxiety and crying due to stress, she had not received any mental health treatment. [R. at 20, 48, 52]. Plaintiff merely stated that she had thought about seeking such treatment. [Id.]. Plaintiff also testified at the hearing that at some point she had taken some unspecified medication that treatment providers at Emory had given her for depression and/or anxiety. [R. at 48]. However, Plaintiff used all of the pills given to her, and there is no indication that she sought any refills or other medication. [Id.]. The fact that Plaintiff sought extensive medical treatment for physical problems but virtually no treatment for mental problems supports a finding that the ALJ was under no obligation to order a consultative mental health evaluation. See Castle v. Colvin, 557 Fed. Appx. 849, 853-54 (11th Cir. 2014) (holding that the ALJ was not required to obtain a consultative evaluation given the lack of treatment, plaintiff's own testimony, and his self-reported activities).

The ALJ further noted that State agency consultant Dr. J. McWilliams reviewed Plaintiff's mental evidence of record in August 2015 and found that there was

insufficient evidence to assess a mental disorder. [R. at 19, 85-88]. Dr. McWilliams pointed out that Plaintiff had been diagnosed with depression by consultative examiner Dr. Donald Kent in 2011. [R. at 19, 86]. However, Dr. McWilliams explained that the diagnosis was not supported by any treatment records or an assessment of activities of daily living. [Id.]. The ALJ explained that he gave Dr. McWilliams' opinion substantial weight because the consultant provided specific reasons for his opinion and because it was supported by the record evidence. [R. at 19]. The ALJ also discussed Dr. Kent's July 2011 consultative evaluation. [R. at 21-22, 25, 474-76]. The ALJ stated that he gave Dr. Kent's opinion less weight because "the limitations assessed by the doctor are inconsistent with the lack of treatment and medications." [R. at 25].

The court finds that substantial evidence supports the ALJ's decision to give substantial weight to Dr. McWilliams' opinion and less weight to Dr. Kent's opinion, which was issued more than three years prior to Plaintiff's alleged onset date. "The Commissioner . . . is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion." Swank v. Colvin, 2015 WL 649019, at *3 (S.D. Ga. February 13, 2015) (citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)). "As the fact-finder, the ALJ was entitled to weigh the evidence and ultimately reject portions of [the physician's] report as inconsistent with other evidence of record."

Kinard v. Astrue, 2013 WL 541428, at *5 (N.D. Ala. February 7, 2013) (citing McCloud v. Barnhart, 166 F. Appx. 410, 418-19 (11th Cir. 2006) (holding that an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion"); 20 C.F.R. § 416.929(c)(4)). See also Bloodsworth, 703 F.2d at 1240. Moreover, although treating source opinions must be accorded substantial weight unless good cause exists to discredit them, no such deference must be given to the opinions of non-treating consultants. See Lewis, 125 F.3d at 1440; Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

The ALJ also discussed a Third Party Adult Function Report completed by Plaintiff's husband in March 2015. [R. at 24, 286-93]. Plaintiff's husband reported that Plaintiff is able to take care of her children aged seven and fifteen by cooking and cleaning. [Id.]. The report also shows that Plaintiff prepares meals with others' help, performs light indoor chores with assistance, shops for groceries approximately every two weeks, does not need reminders to care for herself or take medicine, and is able to pay bills, count change, handle a savings account, and use a checkbook. [Id.]. Plaintiff's daily activities do not support her contention that an additional mental examination was needed in order for the ALJ to make an informed decision.

AO 72A

(Rev.8/82)

Treatment records likewise do not establish that the ALJ lacked sufficient information to evaluate Plaintiff's alleged mental difficulties. Not only did Plaintiff fail to obtain mental health treatment, but, when Plaintiff was seen for physical problems, treatment notes indicate that the mental examinations were generally unremarkable. The ALJ cited to records from Emory University Hospital in September 2014 showing that Plaintiff presented with a headache radiating to the back of her neck. [R. at 22, 572-85]. Throughout the examination, Plaintiff was alert, oriented, in no acute distress, and smiling and laughing intermittently. [Id.]. The ALJ also pointed to records from March 2015 indicating that when Plaintiff was seen for a follow-up after a stroke, she complained of fatigue and depression. [R. at 23, 641-45]. However, Plaintiff was awake, alert, and oriented to person, place, and time. [Id.]. A few days later, Plaintiff was seen in the emergency room for facial swelling associated with tooth pain. [R. at 23, 744-45]. Plaintiff was alert and oriented and had normal affect, insight, and concentration. [Id.]. The lack of mental health treatment sought by Plaintiff and the generally unremarkable mental examinations provide additional support for the ALJ's decision. See Castle, 557 Fed. Appx. at 853-54.

Plaintiff attempts to explain the lack of mental health treatment records by making a conclusory assertion that she had no medical insurance, but Plaintiff cites to

22

no evidence in support thereof. [Doc. 10 at 8]. Neither does Plaintiff cite to any instance when she was prevented from obtaining mental treatment based on a lack of insurance. [Id.]. The Commissioner also correctly notes that Plaintiff does not argue that the ALJ failed in his duty to obtain medical records. [Doc. 12 at 11-12; R. at 95]. In addition, although it is clear from statements made by Plaintiff's counsel at the hearing that he was aware of the lack of evidence supporting Plaintiff's disability claim, there is no indication that Plaintiff submitted additional evidence after the hearing or that Plaintiff even asked the ALJ to order a consultative examination. [R. at 36]. Based on these facts, the court concludes that the ALJ's decision not to obtain additional evidence regarding Plaintiff's mental health was not an abuse of discretion.

The Eleventh Circuit has made it clear that "the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11ᵗʰ Cir. 2003) (citing 20 C.F.R. § 416.912); accord Doughty, 245 F.3d at 1278. The relevant regulations similarly provide that the burden is on the claimant to submit evidence or inform the Social Security Administration about evidence that relates to the issue of whether the claimant is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a). In the present case, Plaintiff did not seek any mental health treatment during her insured period,

AO 72A
(Rev.8/82)

which expired on June 30, 2017, and there is a lack of evidence supporting Plaintiff's allegations of mental limitations greater than those found by the ALJ. Plaintiff was free to obtain an opinion from a medical source and provide this information to the Social Security Administration in support of her claim. The fact that Plaintiff declined to do so did not impose an obligation on the ALJ to seek out an additional consultative mental evaluation, especially given the lack of evidence showing mental health problems and Plaintiff's failure to request such an evaluation.

In sum, the court finds that the ALJ had sufficient evidence to make an informed decision. See Johnson v. Comm'r, Social Security Admin., 618 Fed. Appx. 544, 551 (11th Cir. 2015) ("Where the record contains sufficient evidence to allow an informed decision, however, the duty to fully and fairly develop the record does not impose the requirement to order a consultative examination."); Cooper v. Astrue, 2009 WL 537148, at *7 (M.D. Ga. March 3, 2009) (noting that "an ALJ is not required to order additional consultative examinations if he does not find them necessary to make an informed decision"). The ALJ fully and fairly developed the record, and Plaintiff has failed to show that there are "evidentiary gaps which result[ed] in unfairness or clear prejudice." Brown, 44 F.3d at 935 (citations and internal quotation marks omitted). Because a reasonable person would accept the record evidence as adequate to support

24

the ALJ's conclusion that Plaintiff was not under a disability, remand is not appropriate.  See Lewis, 125 F.3d at 1440.

## VI.   Conclusion

For all the foregoing reasons and cited authority, the court finds that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards.    It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.    The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.[2]

**SO ORDERED**, this 3rd day of September, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[2]On December 26, 2018, an administrative order was issued staying this case in light of lapse of appropriations.  [Doc. 11].  The stay was lifted as of January 25, 2019.

AO 72A

(Rev.8/82)